UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DAN GOODRICK,<br><br>                    Plaintiff,<br><br>vs.<br><br>DEBBIE FIELD, DAVID McCLUSKY, CINDY WILSON, CORIZON, DR. APRIL DAWSON, DR. PHILLIP PETERSEN, DR. CLAYTON BUNT and JANE or JOHN DOES 1-X,<br><br>                    Defendants. | Case No. 1:17-CV-00265-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

In the Successive Review Order addressing Plaintiff Dan Goodrick's Amended Complaint, the Court notified Plaintiff that he could not proceed on his claims that he was not properly treated for his Hepatitis C condition if his claims (1) were or should have been asserted in an earlier Hepatitis C case he filed and litigated to a conclusion in Case No. 3:09-cv-00355-EJL, *Goodrick v. Sandy, et al.* ("Case 2009"), or (2) were barred by the statute of limitations. (Dkts. 17, 15.) The Court permitted Plaintiff to proceed to the

**MEMORANDUM DECISION AND ORDER - 1**

next stage of litigation, which is to face Defendants' procedural defenses, whereupon the Court will determine whether Plaintiff can proceed to the merits of any of his claims.

On December 4, 2019, Defendants filed a joint Motion for Summary Judgment, asserting that Plaintiff's claims were barred by res judicata and the statute of limitations, pursuant to the Successive Review Order (Dkt. 17), as well asserting that the claims are subject to dismissal for failure to exhaust administrative remedies, a defense the Court suggested could be pursued in the Initial Review Order. (Dkt. 11.) Plaintiff has filed his Response, and Defendants have filed their Reply. (Dkts. 54, 55.) The operative pleading at issue is Plaintiff's Amended Complaint. (Dkt. 15.)

Having fully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written motions, briefs and record without oral argument.  D. Idaho L. Civ. R. 7.1(d).  Accordingly, the Court enters the following Order granting in part and denying in part the Motion for Summary Judgment.

## GENERAL BACKGROUND FACTS

Plaintiff, a prisoner who has been incarcerated in the Idaho Department of Corrections (IDOC) prison system since 1992, was first diagnosed with Hepatitis C about 1994. Thereafter, he was seen in the prison's chronic health care clinic every six months

MEMORANDUM DECISION AND ORDER - 2

for a blood draw to test ALT levels. The theory behind the testing was that higher ALT

levels can indicate cirrhosis of the liver. He had a liver biopsy in 2009, due to his

complaints to medical providers that he believed his health was deteriorating. The report

showed:

> Core biopsies of liver parenchyma contain mild portal chronic
> inflammation with no significant piecemeal necrosis. There is
> minimal steatosis presented (approximately 5%,
> microvesticular). Lobules show focal chronic inflammation.
> Trichrome stains demonstrate fibrous portal expansion.
> Reticulin stain shows a relatively intact reticulin network.
> PAS stain shows introacytoplasmic glycogen PAS with
> diastase shows no diagnostic intercytoplasmic inclusions. Iron
> statins show focal iron deposition. There are no features of
> malignancy.

(Dkt. 50-5, p. 5.)

When Dr. Bunt and Dr. Dawson, medical doctors who worked for Correctional

Medical Services (CMS) (the contracted medical provider for the prison, now called

Corizon), reviewed his 2009 liver biopsy, they decided that anti-viral treatment Interferon

(the standard treatment during that time period) was not warranted based on their

company standards, and instead recommended continued monitoring and a follow-up

liver biopsy. (See Amended Complaint, Dkt. 15, pp. 8-9.) Plaintiff alleges that, in 2009,

Dr. Bunt recommended that Plaintiff have continued regular monitoring, as well as a

follow-up liver biopsy in two years and in five years. (Dkt. 54-1, pp. 9-10.) Plaintiff's

**MEMORANDUM DECISION AND ORDER - 3**

medical records show that, at the least, a follow-up biopsy was to be performed five years from 2009 – in 2014. (Dkt. 50-5, pp. 13-16.)

Plaintiff disagreed with the prison doctors' decision denying him Interferon treatment. He filed the lawsuit in Case 2009. After discovery and briefing, United States District Judge Edward J. Lodge granted summary judgment for the defendants, concluding that they had not been deliberately indifferent to Plaintiff's serious medical needs. Plaintiff filed an appeal. The United States Court of Appeals for the Ninth Circuit affirmed denial of Plaintiff's claims. (*See* Docket in Case 2009.)

On April 8, 2014, Plaintiff, who was then 64 years old, had a chronic disease follow-up visit with Physician's Assistant (PA) Matthew Valley, according to medical records submitted by Defendants. Plaintiff's APRI score was 2.98.[1] The notes say that Plaintiff did not want a liver biopsy but would agree to an ultrasound. (*Id.*, p. 20.) Plaintiff disputes that declined a biopsy.

---

[1] APRI is an acronym for "AST to Platelet Ratio Index." (APRI). For explanatory purposes only (and not for the truth of the matter), the Court notes that a group of experts opined: "In a meta-analysis of 40 studies, investigators concluded that an APRI score greater than 1.0 had a sensitivity of 76% and specificity of 72% for predicting cirrhosis. In addition, they concluded that APRI score greater than 0.7 had a sensitivity of 77% and specificity of 72% for predicting significant hepatic fibrosis." Another set of experts opined: "For detection of cirrhosis, using an APRI cutoff score of 2.0 was more specific (91%) but less sensitive (46%)." *See* https://www.hepatitisc.uw.edu/page/clinical-calculators/apri (citing Lin ZH, Xin YN, Dong QJ, et al., "Performance of the aspartate aminotransferase-to-platelet ratio index for the staging of hepatitis C-related fibrosis: an updated meta-analysis." *Hepatology*. 2011;53:726-36; and Chou R, Wasson N., "Blood tests to diagnose fibrosis or cirrhosis in patients with chronic hepatitis C virus infection: a systematic review." *Ann Intern Med*. 2013;158:807-20).

**MEMORANDUM DECISION AND ORDER - 4**

On February 6, 2015, Plaintiff had a bilateral renal ultrasound. (Dkt. 54-2, p. 20.) The "Indications" section of the report shows the test was done for "Hematuria, Proteinuria, and new onset chronic kidney disease." *Id.* The findings were that the right and left kidneys were normal. (*Id.*)

On April 23, 2015, Plaintiff had an abdominal ultrasound. The history noted on the ultrasound report was "Hepatitis-C with probable cirrhosis; hepatocellular carcinoma screening." (Dkt. 54-3, p. 2.) The conclusion was: "Solitary gallstone with probable low grade chronic cholecystitis." (*Id.*)

In October 2015, Plaintiff was rushed to the IMSI medical unit with blood pressure of 230/190. (Dkt. 15, p. 12.) He asserts that he was given a drug to keep him sedated for three weeks, and then he was taken to the hospital because his "kidneys began to shut down." (*Id.*) On October 29, 2015, Plaintiff presented to the St. Luke's Nephrology Clinic for diagnosis and treatment for suspected chronic kidney disease. Dr. Liang Wu's report from October 29, 2015, contained an assessment that Plaintiff had chronic kidney disease, stage 3, with "progressive worsening within the past 12 months." (Dkt. 50-5, p. 30.) Dr. Wu suggested a course of treatment to prison doctors—first, a regimen to improve Plaintiff's kidney condition, and second, treatment with Harvoni medication, intended to eradicate Hepatitis C from his system after his kidney condition had stabilized. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 5**

An abdomen ultrasound report, from July 26, 2018, three years later, again shows normal kidneys. It also showed a "homogeneous liver" with "lobulated contours" that "may be a reflection of cirrhosis." (Dkt. 50-5).)

In this lawsuit, Plaintiff alleges that no "ultrasound, CAT scan, MRI, or x-rays were performed upon Plaintiff's liver as part of monitoring his HCV until in late 2015 it was discovered the Plaintiff's HCV had progressed from HCV to cirrhosis of the liver, hypertension of the liver, and renal kidney disease." (*Id.*, p. 11.) He also alleges that "Defendant Bunt failed to supervise Defendants Does I-X in that no follow-up liver biopsy was ever had and, the only sort of HCV monitoring was every four to six (4-6) months in the Chronic Care Clinic where blood was drawn and nothing more." (*Id.*)

Plaintiff asserts that he filed a grievance on these issues on January 29, 2016. (Dkt. 15-3, p. 11.) Defendants dispute that. Plaintiff submitted his lawsuit in the current action to prison officials for filing on June 22, 2017. (Dkt. 4.)

## SUMMARY JUDGMENT STANDARD OF LAW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored

MEMORANDUM DECISION AND ORDER - 6

procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if the party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

**MEMORANDUM DECISION AND ORDER - 7**

existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be stricken. Fed. R. Civ. P. 56(c)(2). Submitted affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that

the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving

for summary judgment does not bear the ultimate burden of proof at trial, that party may

prevail simply by "pointing out to the district court[] that there is an absence of evidence

to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The Court does not determine the credibility of affiants or weigh the evidence set

forth by the parties. Although all reasonable inferences which can be drawn from the

evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec.

Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences

from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment

rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir.

2018). In opposing a motion for summary judgment, a pro se inmate must submit at least

"some competent evidence," such as a "declaration, affidavit, [or] authenticated

document," to support his allegations or to dispute the moving party's allegations. *Id.* at

873 (upholding grant of summary judgment against pro se inmate because the "only

statements supporting [plaintiff's] ... argument are in his unsworn district court responses

to the defendants' motion for summary judgment and to the district court's show-cause

order").

**MEMORANDUM DECISION AND ORDER - 9**

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," or if a litigant needs more time to obtain declarations or do discovery, the Court may "give an opportunity to properly support or address the fact," "defer considering the motion nor deny it," or "issue any other appropriate order." Fed. R. Civ. P. 56(d)-(e).

## CONSIDERATION OF EXHAUSTION DEFENSE

### 1.        Standard of Law

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] prisoners are required to exhaust all available prison administrative remedies before they can bring their claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

---

[1]        Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

"Courts may not engraft an unwritten 'special circumstances' exception" to excuse a prisoner's failure to follow prison policies governing administrative remedies "onto the PLRA's exhaustion requirement." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). Rather, the Supreme Court observed, "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.*

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The exhaustion requirement supports the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute prevents a summary judgment decision, the Court is authorized—but not required—to decide the disputed facts in an

MEMORANDUM DECISION AND ORDER - 11

appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted).

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

**MEMORANDUM DECISION AND ORDER - 12**

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

## 2.  Discussion

The Court first addresses Plaintiff's assertion that Defendants should not have included any defenses except for timeliness and preclusion in its Motion for Summary Judgment, as well as Plaintiff's argument that the Court should not consider Defendants' exhaustion defense. The Court clarifies that it *is* permissible for Defendants to raise the issue of failure to exhaust administrative remedies in their early Motion for Summary Judgment. Exhaustion should be addressed early in a case, *see Albino v. Baca*, 747 F.3d at 1171, and nothing in the Court's Successive Review Order prohibited such a defense, even though it focused on the statute of limitations and preclusion defenses that were evident from the face of the Amended Complaint.

The Court now turns to Defendants' exhaustion defense. Plaintiff is a frequent litigator and is well aware of the rules for exhaustion. To support his exhaustion argument, he has submitted a copy of a grievance without any response or appeal. He asserts that he was living in administrative segregation during this time period, and he was at the mercy of correctional officers to pick up and turn in his concern forms and grievances. He says that prison officials never responded to his grievance. As a result, he

MEMORANDUM DECISION AND ORDER - 13

argues, he was absolved from having to appeal. Plaintiff made this same type of argument in Case 2009. There, Judge Lodge observed, "Even if the Court assumes that he submitted the grievance at the correct time and that officials failed to respond, the record shows that he did not inquire as to when his grievance would be resolved, or even whether it had been received." (Case 2009, Dkt. 62, p. 8.)

As in Plaintiff's prior case, Defendants have provided evidence that Plaintiff filed six other grievances from administrative segregation during that same time period that all were delivered to prison officials. (Dkt. 50-3, pp. 8-10), and that the IDOC grievance log does not show that Plaintiff's grievance was ever received. (*See* Dkt. 50-3, pp. 1-6.) Plaintiff correctly asserts that these genuine disputes over material facts require a credibility determination. Therefore, the Court will hold an evidentiary hearing on the defense of failure to exhaust administrative remedies. This portion of the Motion for Summary Judgment will be denied without prejudice under Rule 56(d) and (e), but will be subject to reopening after presentation of the evidence and post-hearing briefing.

## CONSIDERATION OF STATUTE OF LIMITATIONS DEFENSE

### 1. Standard of Law for Statute of Limitations

The statute of limitations period for filing a civil rights lawsuit under 42 U.S.C. §1983 is determined by the statute of limitations period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to

MEMORANDUM DECISION AND ORDER - 14

claims brought under the Securities Exchange Act of 1934, not applicable here). Idaho

Code § 5-219 provides for a two-year statute of limitations for professional malpractice,

personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho

are governed by this two-year statute of limitations. The statute of limitations is tolled

while the inmate exhausts administrative grievance procedures pursuant to the Prison

Litigation Reform Act (PLRA). *Brown v. Valoff*, 422 F.3d at 943.

### 2.  Standard of Law for Accrual  of Claim - Discovery Rule

Although the state statute of limitations governs the time period for filing a claim,

federal law governs when a claim accrues. *Elliott v. City of Union City*, 25 F.3d 800,

801-02 (9th Cir. 1994). The Ninth Circuit has determined that a claim accrues when the

plaintiff knows, or should know, of the injury that is the basis of the cause of action. *See

Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Under this "discovery rule," the

statute begins to run once a plaintiff knows of his injury and its cause. *Gibson v. United

States*, 781 F.2d 1334, 1344 (9th Cir. 1986).

In medical cases, it is sometimes difficult for a patient to "discover" his injury

when being treated by a physician upon whom he is relying for expert opinions and care.

In *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983), in the context of an FTCA

claim, the court explained that a patient must know or have reason to know both the

existence and the cause of the injury:

**MEMORANDUM DECISION AND ORDER - 15**

> When a physician's failure to diagnose, treat, or warn a
> patient results in the development of a more serious medical
> problem than that which previously existed, identification of
> both the injury and its cause may be more difficult for a
> patient than if affirmative conduct by a doctor inflicts a new
> injury. Where a claim of medical malpractice is based on the
> failure to diagnose or treat a pre-existing condition, the injury
> is not the mere undetected existence of the medical problem
> at the time the physician failed to diagnose or treat the patient
> or the mere continuance of that same undiagnosed problem in
> substantially the same state. Rather, the injury is the
> development of the problem into a more serious condition
> which poses greater danger to the patient or which requires
> more extensive treatment. In this type of case, it is only when
> the patient becomes aware or through the exercise of
> reasonable diligence should have become aware of the
> development of a pre-existing problem into a more serious
> condition that his cause of action can be said to have accrued.

*Id*. at 1078.

### 3. Standard of Law for Continuing Violation Doctrine

The continuing violation doctrine has been applied in § 1983 actions. *See*

*Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). In *Gutowsky*, the

plaintiff alleged that the county had an ongoing policy of discrimination throughout many

years of employment there, and she pointed to specific examples of discrimination

outside the statute of limitations period that were "not the basis of her charge of

discrimination" but were "evidence that a policy of discrimination pervaded [her

employer's] personnel decisions." *Id*. at 260. The court determined that her claim was

timely filed, because she "contend[ed] that the widespread policy and practices of

**MEMORANDUM DECISION AND ORDER - 16**

discrimination of which she complain[ed] continued every day of her employment, including days that [fell] within the limitation period." *Id*.

Since *Gutowsky*, the law has been narrowed and clarified. In general, it is no longer true, as in *Gutowsky*, that "if a discriminatory act took place within the limitations period and that act was 'related and similar to' acts that took place outside the limitations period, all the related acts—including the earlier acts—were actionable as part of a continuing violation." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002). That is, the continuing violation doctrine does *not* apply when a plaintiff's claims are based on "discrete acts." *McCollum v. California Dep't of Corrections*, 647 F.3d 870, 877 (9th Cir. 2011).

More recently, in *Pouncil v. Tilton*, 704 F. 3d 568 (9th Cir. 2012), the United States Court of Appeals for the Ninth Circuit further clarified that the date a cause of action accrues is determined by analyzing whether the plaintiff's claim is centered on (1) a defendant's discrete act that occurred *within* the statute of limitations period, allowing a plaintiff to proceed on the claim, or (2) merely an *inevitable consequence* that occurred within the statute of limitations period as a result of a discrete act that occurred *outside* the statute of limitations period, which prevents a plaintiff from proceeding. *Id*. at 576-79, 581-83.

**MEMORANDUM DECISION AND ORDER - 17**

### 4.   Standard of Law for Equitable Tolling

If a claimant cannot show that his claim accrued during the statute of limitation period, he still may file a lawsuit beyond the statute of limitation deadline if he can show that his statute of limitation should have been tolled (or stopped) for a certain period of time during the deadline period within which he should have filed the lawsuit. In a civil rights case such as this, state tolling provisions apply unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975).

The Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007). Idaho statutorily tolls the limitations period for a person's minority status or insanity. I.C. § 5-230.

### 5.   Standard of Law for Equitable Estoppel

The theory of equitable estoppel "does not 'extend' a statute of limitation"; rather, it works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics International, Inc*., 887 P.2d 1039, 1041 (Idaho 1994).

MEMORANDUM DECISION AND ORDER - 18

Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*. at 1041.

### 6. Discussion of Claims Potentially Subject to Statute of Limitations Defense

#### A. *Failure to Receive Follow-Up Liver Biopsies*

Plaintiff alleges in his Amended Complaint that, because he did not receive the recommended 2011 and 2014 follow-up liver biopsies after his 2009 liver biopsy, his condition deteriorated, and he developed multiple liver and kidney conditions, as well as hypertension. He further alleges that the doctors and other officials who knew the biopsy schedule failed to train and supervise other medical personnel, which caused Plaintiff not to receive his biopsies according to the recommended guidelines.

Plaintiff asserts that he filed a grievance on these issues on January 29, 2016. (Dkt. 15-3, p. 11.) Plaintiff submitted his current lawsuit to prison officials for filing on June 22, 2017. (Dkt. 4.) Clearly, several years elapsed between the alleged failure to provide the biopsies in 2011/2014 and filing of the grievance in 2016, and even more time passed

MEMORANDUM DECISION AND ORDER - 19

before the lawsuit was filed. Plaintiff desires to rely on the continuing violation doctrine

to show that his claims are timely.

In *Runkle v. Pennsylvania, Dep't of Corr.*, No. CIV.A. 13-137, 2013 WL 6485344,

(W.D. Pa. Dec. 10, 2013), the court faced a similar claim. It concluded:

> Here, each time Plaintiff was denied treatment for Hepatitis C
> he had a cause of action available to him. Plaintiff has
> acknowledged as much, having filed two grievances in
> January of 2011 complaining of conduct which he himself has
> categorized as deliberate indifference to his medical needs in
> violation of his Eighth Amendment rights. The fact that
> Plaintiff was repeatedly denied treatment does not aggregate
> those discrete acts into a continuing violation. *See Hunt v. Pa.
> Dept. of Corrections*, 289 F. App'x 507, 509 (3d Cir. 2008),
> quoting *Kichline v. Consol. Rail Corp*., 800 F.2d 356, 360 (3d
> Cir. 1986) ( "[The] continuing conduct of defendant will not
> stop the ticking of the limitations clock begun when plaintiff
> obtained [the] requisite information. On discovering an injury
> and its cause, a claimant must choose to sue or forego that
> remedy").

*Id*. at *5.

In the case at hand, the Court agrees with Defendants that the "continuing

violation" doctrine does not apply to failure-to-biopsy claims. Plaintiff's allegations show

that he was on notice that he had a potentially serious medical condition that needed

follow-up by 2011 or 2014. He *knew* he did not receive the follow-up biopsies in 2011

and 2014. He should have begun his administrative remedy process then—which very

**MEMORANDUM DECISION AND ORDER - 20**

well could have resulted in obtaining the biopsies. Plaintiff possessed all of the information he needed to exhaust administrative remedies and file suit in 2011 and 2014.

Plaintiff asserts that Defendants did not offer him a follow-up liver biopsy, but simply skipped over it and then lied about Plaintiff preferring an ultrasound to a biopsy (Plaintiff received an ultrasound). (Dkt. 54-1, p. 3.) His medical records show otherwise, which creates a dispute of fact on the merits of the claim. However, Plaintiff cannot reach the merits of his claim unless he shows that he timely filed a lawsuit upon his personal observation that he was not going to be given a liver biopsy within either the two or five years recommended by prison doctors. When Plaintiff did not want an ultrasound but wanted a biopsy, as he contends, Defendants allegedly ignored him and performed an ultrasound anyway. *That* was the time to exhaust administrative grievances and file a suit if the issues were not remedied by the grievance. It is too late to complain of these plainly obvious alleged acts, omissions, and harms years later.

Plaintiff is a frequent filer and an experienced litigator. He has not brought forward any viable facts upon which to base equitable tolling or equitable estopped for his follow-up biopsy claims, including failure to train and failure to supervise claims and all other such claims arising from this same set of facts. That is, *it was impossible for Defendants to hide from Plaintiff the fact that the biopsies did not happen as recommended*. These claims will be dismissed with prejudice as untimely.

**MEMORANDUM DECISION AND ORDER - 21**

###### B. *Other Claims that May be Subject to a Later Accrual Date or Equitable Estoppel*

Plaintiff asserts that, after the 2009 lawsuit concluded in 2011, Defendants said they were going to "monitor" Plaintiff's Hepatitis C condition, but that their "monitoring" consisted only of "a blood draw anywheres from 3-6 months to check ALT which the American Medical Association and other notable medical agencies deemed to be fallible and unreliable." (Dkt. 54-1 (verbatim).) If Plaintiff proceeds beyond the exhaustion defense stage of this proceeding, Plaintiff will be required to supplement the record with information about when and how he learned that the ALT testing was fallible and unreliable, so that the Court can determine the statute of limitations issue. Whether the type of monitoring Plaintiff was receiving was, in fact, fallible and unreliable, is a merits-based issue.

Plaintiff also alleges that, beginning in early 2015, Defendants knew but concealed from him information that he had renal kidney disease and cirrhosis of the liver, while at the same time, they refused to "take any corrective action and allow[ed] his organs to shut down caus[ing] them further damage." (Dkt. 54-1, p. 4.) The Court is unable to discern what Defendants knew and when they knew it from the current record. Supplemental information will be required to further explain Defendants' notice of Plaintiff's worsening condition (and to explain the meaning of the test results) if Plaintiff's case survives the exhaustion defense stage of proceedings.

**MEMORANDUM DECISION AND ORDER - 22**

The Court will not address these issues at this time, as the pending exhaustion defense may moot any need to do so in the present lawsuit. Defendants' Motion for Summary Judgment on this set of claims will be denied without prejudice.

### CONSIDERATION OF CLAIM AND ISSUE PRECLUSION DEFENSES

The United States Supreme Court has explained:

> Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 356 (1979). In addition, the prior judgment is conclusive "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States*, 463 U.S. 110, 130 (1983).

The Court does not find the need to address this defense at this time, because the claims that would be subject to preclusion would also be subject to dismissal for failure to exhaust administrative remedies. This portion of the Motion for Summary Judgment will be dismissed without prejudice to Defendants reasserting it if Plaintiff's case is not dismissed on grounds of failure to exhaust administrative remedies.

**MEMORANDUM DECISION AND ORDER - 23**

# ORDER

**IT IS ORDERED:**

1. Defendants' joint Motion for Summary Judgment (Dkt. 50) is GRANTED in part as to all of Plaintiff's claims arising from his allegations that he failed to receive proper follow-up liver biopsies om 2011 and 2014, including failure to train and failure to supervise claims and all other such claims arising from this same set of facts; these claims are DISMISSED with prejudice. The Motion for Summary Judgment is DENIED without prejudice in part as to all other claims. The Court will re-open the Motion on administrative exhaustion grounds after additional evidence and briefing is received. If the claims survive the exhaustion defense, then the Court will re-open the Motion on statute of limitations and preclusion grounds.

2. The Court will hold an evidentiary hearing on the failure to exhaust administrative remedies issue. Counsel for Defendants are ordered to provide the Court's Deputy Clerk, Jamie Bracke, with several dates they are available for a half-day hearing approximately 90 days from the date of this Order, and to discuss nothing further with her other than available dates. Should Plaintiff have a conflict with the date selected by Deputy Bracke based on counsels' availability, he may address that in writing within five days of being notified of the date for the evidentiary hearing.

3.  Plaintiff shall provide the Court with a list of witnesses to be subpoenaed for the hearing, including the nature of their testimony and their current addresses within 30 days after entry of this Order.

4.  The parties shall exchange witness lists, including the nature of the testimony of each witness, and copies of exhibits to be used at the hearing at least 30 days prior to the hearing.

DATED: April 22, 2020

B. Lynn Winmill
U.S. District Court Judge