IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN GOODRICK,<br><br>      Plaintiff,<br><br>v.<br><br>DEBBIE FIELD, et al.,<br><br>      Defendants. | Case No. 1:17-CV-265-BLW<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

## INTRODUCTION

The Court held an evidentiary hearing for the purpose of resolving the issue whether plaintiff Goodrick exhausted his administrative remedies. At the conclusion of that hearing, the Court took the matter under advisement and directed the parties to file further briefing that has now been received. After considering the evidence and the case law, the Court has concluded, for the reasons set forth below, that Goodrick did not exhaust his administrative remedies. Consequently, this action must be dismissed.

## LITIGATION BACKGROUND

Plaintiff Goodrick is an inmate at ISCI. He has sued Corizon and various officials from the Idaho Department of Corrections (IDOC) claiming that he did not receive proper treatment for his kidney and liver ailments. More specifically,

**Findings of Fact & Conclusions of Law – page 1**

he alleged that (1) defendants failed to give him liver biopsies that would have allowed treatment to start earlier and be more effective; (2) defendants monitored his Hepatitis C condition with a test they knew was fallible and unreliable; and (3) defendants knew he had renal kidney disease and cirrhosis of the liver but hid this from him and failed to treat him.

Defendants filed a motion for summary judgment relying largely on a statute of limitations defense and a defense that he failed to exhaust his administrative remedies. The Court held that there were questions of fact on the failure to exhaust defense that had to be resolved in an evidentiary hearing, the hearing that is the subject of this decision. However, there were no questions of fact concerning the liver biopsy claim, and the Court dismissed it as untimely.

Turning to the exhaustion issue, Goodrick alleges that he filed a Concern Form on January 9, 2016, complaining that IDOC's failure to treat his Hepatitis C caused cirrhosis of the liver and other problems. That Concern Form is Exhibit 7 and will be discussed further below. When Goodrick received no response to that Concern Form, he testified he filed a Grievance Form – the second step in the grievance process – on January 29, 2016.

Defendants respond that the Concern Form appears to be a forgery and that their grievance log shows no Grievance Form was ever filed as claimed by Goodrick. Defendants argue further that Goodrick knows how to use the system

because he properly submitted six Grievance Forms on other issues during this time period. It is undisputed that Goodrick submitted this lawsuit to prison officials for filing on June 22, 2017.

## FINDINGS OF FACT

IDOC's grievance process requires the inmate to complete three steps, in the following order: (1) Seek an informal resolution of the matter by completing an Offender Concern Form; (2) Complete a Grievance Form if an informal resolution cannot be accomplished; and (3) File an appeal if necessary. The first step – completing the Offender Concern Form – requires the inmate to fill out the form and address it to the staff member most capable of responding to and, if appropriate, resolving the issue. If the issue cannot be resolved informally, an inmate proceeds to the second step by filing a Grievance Form – only one specific issue can be raised in Grievance Form. If the inmate has additional issues, he must file a separate Grievance Form for each issue. The Grievance Form is required to be submitted within thirty days after the incident or problem that is the basis for the grievance; however, an extension of time may be granted by the reviewing authority. It must also contain specific information including the nature of the complaint, dates, places, and names, and the inmate must suggest a solution to the issue.

Upon receipt of a Grievance Form, the Grievance Coordinator enters the grievance information into the Corrections Integrated System ("CIS"), which is an electronic database used to log offender grievances and grievance appeals. The Grievance Coordinator determines if the Grievance Form is completed correctly. If the form is completed correctly, the Grievance Form is entered into the CIS and then assigned to the staff member most capable of responding. If the Grievance Form is completed incorrectly, it is returned to the offender using the Grievance Transmittal Form where the inmate may then correct the Grievance for processing. The Grievance Coordinator assigns the correctly completed grievance to the staff member most appropriate to respond to and, if appropriate, resolve the grievance issue. Staff must answer and return the Grievance to the Grievance Coordinator within fourteen days. Once the staff member responds to the Grievance Form, the response is sent to the Grievance Coordinator who logs the information in the CIS database. The information is then forwarded by the Grievance Coordinator to a "reviewing authority," who is usually a deputy warden.

Within sixteen days of receiving the Grievance Form from the Grievance Coordinator, the reviewing authority must review the Grievance, the staff member's response and, as needed, any applicable rules or policies, and deny, modify, or grant the offender's suggested solution. The reviewing authority then returns the Grievance Form to the Grievance Coordinator who logs the reviewing

authority's response in the CIS database.  A copy of the response is then printed, attached to the original grievance paperwork submitted by the offender, and returned to the offender via institutional mail. The Grievance Coordinator then files a copy of the original Grievance Form, and any attachments submitted with the grievance, in the facility administration area.

If the inmate is not satisfied with the response to his Grievance Form, he may, within fourteen days of receiving the response, file an appeal.  Failure to file an appeal completes the grievance process on the issue grieved.

Upon receiving an appeal, the Grievance Coordinator enters it into the CIS database and forwards it to the "appellate authority."  At IMSI, the appellate authority varies depending on the category of the issue grieved, and as to medical grievances, the contract medical provider acts as the appellate authority.  The appellate authority must draft a response within sixteen days of receipt of the grievance appeal, and must return it to the Grievance Coordinator, who will log the response in CIS.  The Grievance Coordinator will forward the printed Grievance Form and the offender's original attachments to the offender and file a copy of the printed Grievance Form, the copy of the Grievance/Appeal form, and copies of all attachments in the facility administration area.

Upon completion of all three steps – the Offender Concern Form, the Grievance Form, and the Grievance Appeal – the inmate has exhausted the

grievance process. Goodrick's grievance history shows that he is very familiar with this grievance process and has made use of it numerous times over many years.

Goodrick testified that he filed the Concern Form submitted as Exhibit 7 on January 9, 2016. When nobody responded to that Concern Form, Goodrick testified that he submitted a Grievance Form on January 29, 2016. Defendants respond that the Concern Form is a forgery, and that IDOC's data base (CIS) contains no record of the Grievance Form that Goodrick says he submitted. Even if he filed that Grievance Form and it was returned without action because it was filled out improperly or was duplicative of an earlier Grievance Form, CIS would contain a record of that but there was no such record. In any case, the Grievance Form attached to the Amended Complaint shows that this grievance was never appealed.

Because the exhaustion analysis requires an evaluation of the facts together with the law, the Court will conduct that analysis in the Conclusions of Law section below after reviewing the legal standards governing this case.

## CONCLUSIONS OF LAW

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), prisoners are required to exhaust all available prison administrative remedies before they can bring their claims in a new or ongoing civil rights lawsuit challenging the

conditions of their confinement. *See* 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Courts may not engraft an unwritten "special circumstances' exception" to excuse a prisoner's failure to follow prison policies governing administrative remedies onto the PLRA's exhaustion requirement." *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016). Rather, the Supreme Court observed, "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Id.*

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211(2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010). The exhaustion requirement supports the important policy concern that prison officials should have "an

opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

The exhaustion issue should be resolved "at the very beginning of the litigation" by the Judge rather than the jury. *Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014) (en banc). The defendant bears the ultimate burden of proving failure to exhaust. *Brown v. Valoff,* 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The defendants carried their burden of showing that an administrative remedy existed and that Goodrick failed to exhaust that remedy. The burden of production shifts to Goodrick to produce evidence that he complied with the administrative remedy or that it was effectively unavailable to him.

Goodrick argues first that certain individual defendants in this lawsuit are prison officials who are not amendable to the grievance process, and that he cannot be required to file a grievance as to them. However, this argument essentially asks

**Findings of Fact & Conclusions of Law – page 8**

the Court to rewrite the PLRA to include an exception that would swallow the exhaustion requirement, allowing inmates to sue higher-level prison officials without requiring any exhaustion of administrative remedies. There is no such exception in the PLRA, and the Court declines to amend the PLRA to provide such an exception. Moreover, Goodrick's argument ignores IDOC's grievance process that requires grievance of medical issues regardless of the personnel involved. *See Grievance Process Exhibit 1* at pg. 6.

Goodrick asks the Court to take judicial notice that after the bench trial, a corrections officer told him that the defendant officials who work at IDOC headquarters are not required to answer grievances and that the corrections officer would be answering instead. *See Request for Judicial Notice (Dkt. No. 88)*. However, the doctrine of judicial notice is not designed to admit into evidence hearsay statements. Moreover, the correction officer's statement is irrelevant because the grievance process described above clearly requires Goodrick to file grievances concerning his medical treatment. The Court will therefore deny the request to take judicial notice and will reject Goodrick's argument that he need not file a grievance against certain defendants.

To establish that he started the grievance process, Goodrick testified that he submitted the Concern Form that is in Plaintiff's Exhibit 7. *See Transcript* at pp. 24, 27. He was required to place the Concern Form outside his cell to be picked up

**Findings of Fact & Conclusions of Law – page 9**

by a corrections officer. That Concern Form contains a space for the signature of the correction officer who retrieved the form and a separate space for that officer to write his Associate ID number. On Exhibit 7, both spaces are filled in. *See Exhibit 7 at Dkt. No. 85-4.* Goodrick testified that he did not know who retrieved the Concern Form from his door, signed the form, or wrote the Associate ID number. *Id.* at pp. 27-28.

The unit log from the administrative segregation unit (A-Block) does not contain any entry that the Concern Form, Exhibit 7, was collected. *See Exhibit C to Haney Declaration (Dkt. No. 85-3).* Further, defendant Corizon has no evidence of receiving Exhibit 7 within their records. *See Transcript* at p. 100.

Exhibit 7 itself contains serious flaws. First, there is no evidence that the Associate ID number on the Concern Form – 93586 – is assigned to any correctional officer. *See Phillips Testimony* at 65-66; *Haney Declaration (Dkt. No. 85-3)* at ¶ 3. While there was no evidence that any correctional officer had an Associate ID number containing five numerical digits, Goodrick argued that he had evidence that some correction officers were assigned such numbers, and the Court gave him an opportunity to submit that evidence, but he failed to submit any such evidence. Instead, Goodrick pivots to an explanation that the first two digits – 93 – should be read as the letter "B" instead of two numerical digits. That would more closely correspond to correctional officers' Associate ID numbers, which contain a

**Findings of Fact & Conclusions of Law – page 10**

letter and three numerical digits.  But the two numerical digits – 93 – are written so clearly on the Concern Form that it would be absurd to read those digits as the letter "B".  *See Exhibit 7 at Dkt. No. 85-4.*

If the first two digits were read as the letter "B", that Associate ID number belonged to Officer Larry Haney.  *See Haney Declaration* at ¶ 3.  Officer Haney testifies in his Declaration that he did not sign the concern form or write the Associate ID number, and that the signature on that Form is not his.  *Id.* at ¶¶ 7, 8.  He provided the Court an example of his handwriting on a concern form.  *See Exhibit B (Dkt. No. 85-5).*  Whoever signed Exhibit 7 was clearly trying to copy Officer Haney's signature.  Comparing Officer Haney's actual signature against the signature on Goodrick's Concern Form, one can see that the signature on Goodrick's Concern Form is wobbly in contrast to the smooth actual signature.  Where Officer Haney's signature appears to be written in one continuous stroke, several lines on the signature on Goodrick's Concern Form do not even connect.  The loop on the lower right of the forged signature incorrectly turns to the left, rather than the right.

This evidence causes serious doubts as to the legitimacy of Exhibit 7.  This is not the first time Goodrick's credibility has been questioned.  In a similar case filed in this District about seven years before this case, Judge Lodge was confronted with Goodrick's claim that he submitted a Concern Form and a

**Findings of Fact & Conclusions of Law – page 11**

Grievance Form despite evidence that neither form was actually submitted: "The Court harbors some doubt that Plaintiff actually routed the grievance through the appropriate channels at the correct time. He has not attached a copy of the concern form that he allegedly sent to Sergeant French, which is required by policy." *See Memorandum Decision in Goodrick v. French, 3:09-cv-355-EJL (Dkt. No. 62 at p. 7).*

In the present case, Goodrick testified that he submitted Exhibit 7 in compliance with the first required step in the grievance process.  The Court finds that testimony is not credible due to the following factors:  (1) The discrepancies in the signature; (2) The invalid Associate ID number; (3) The lack of any entry in the A-Block unit log that Exhibit 7 was received and the lack of any similar entry in Corizon's records; and (4) the prior experience in Judge Lodge's case.

Goodrick also testified that once he received no response to his Concern Form, he attached the Concern Form to a Grievance Form and filed it in compliance with the grievance process.  However, there is no record of this Grievance Form ever having been filed, and, even if filed and denied or ignored, there is no record that Goodrick appealed as required by the grievance process. Most importantly, for the reasons previously explained, the Court finds that Goodrick's testimony that he filed the Grievance Form with the Concern Form attached is simply not credible.

Accordingly, the Court finds that (1) there existed an available administrative remedy for Goodrick's grievances; (2) Goodrick failed to exhaust that remedy; and (3) there is nothing in his particular case that made the existing and generally available administrative remedies effectively unavailable to Goodrick.

Thus, this lawsuit must be dismissed. Goodrick has filed a motion to amend his complaint to add new causes of action but because this action must be dismissed, that motion must be denied. As discussed above, the Court will also deny the motion to take judicial notice. The Court will issue a separate Judgment as required by Rule 59(a).

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that this action be DISMISSED for failure to exhaust administrative remedies. The Clerk is directed to close this case.

IT IS FURTHER ORDERED, that the plaintiff's motion to amend (docket no. 80) and plaintiff's motion to take judicial notice (docket no. 88) are DENIED.

IT IS FURTHER ORDERED, that the defendants' motion to stay briefing on the motion to amend (docket no. 86) and the motion is limine (docket no. 71) are DEEMED MOOT.

DATED: October 29, 2020

_____
B. Lynn Winmill
U.S. District Court Judge